**80**

George ENG, Joel Clayman, Ronald West, Martin Spence, John Griffin, Joseph Rivera, Raheem Supreme, and Alonzo Starling individually and on behalf of all persons similarly situated, Plaintiffs–Appellees,

v.

Harold J. SMITH, Superintendent of Attica Correctional Facility, Charles James, Deputy Superintendent of Attica Correctional Facility, Thomas A Coughlin, III, Commissioner of Corrections of New York State, Correction Officers Amico, Bannon, Bishop, Calderon, Mannon, Shahahan, Smith, Wagner, Wolfe, and other presently unnamed Correction Officers employed by Attica Correctional Facility all individually and in their official capacities, Defendants–Appellants.

**No. 1153, Docket 88–2101.**

United States Court of Appeals, Second Circuit.

Argued May 26, 1988.

Decided June 13, 1988.

Joseph L. Gerken, Buffalo, N.Y., Prisoners' Legal Services of New York (David C. Leven, Executive Director, of counsel), for plaintiffs-appellees.

Peter G. Crary, Albany, N.Y., Asst. Atty. Gen. of the State of N.Y. (Robert Abrams, Atty. Gen., State of New York, Peter H. Schiff, Deputy Sol. Gen., Nancy A. Spiegel, Asst. Atty. Gen., of counsel), for defendants-appellants.

Before FEINBERG, Chief Judge, NEWMAN and PRATT, Circuit Judges.

FEINBERG, Chief Judge:

This is an interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1) from an order of the United States District Court for the Western District of New York, Michael A. Telesca, J., granting a preliminary injunction in a class action pursuant to 42 U.S.C. § 1983 challenging the conditions at the Special Housing Unit (SHU) at the Attica Correctional Facility. The preliminary injunction requires the defendants in the class action (appellants here) to provide mental health services at Attica in accordance with various specified procedures.

The underlying class action in this case has had a long and protracted history. For our purposes now, it is only important to note that following the June 1985 suicide of Anthony Dzeilak, an SHU inmate with a history of mental health problems, the class action plaintiffs moved to enjoin defendants from confining mentally ill inmates in SHU and from harassing inmate

witnesses; to require screening and mental health training of SHU corrections officers; and to remove several officers from SHU duty who allegedly had harassed inmates with mental health disorders. The district court held five evidentiary hearings during which the court heard extensive testimony from plaintiffs' and defendants' experts as well as from the New York State Office of Mental Health (OMH) regarding the treatment of inmates with mental health problems at Attica, and in SHU in particular. Following the hearings, the parties engaged in extensive negotiations in an attempt to reach a settlement, and, at the court's request, OMH participated in the negotiations.

In January 1987, when it became clear that defendants would not agree to any consent order, the court issued an order pursuant to Rule 23(d) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1651, ordering relief based largely upon a proposal that had been submitted by OMH. However, the court apparently adopted virtually all of the changes to the order that defendants had suggested. The court viewed its action as akin to imposing a consent decree upon the parties and specifically declined to make the requisite factual findings needed to support a preliminary injunction. Defendants appealed and in September 1987 we remanded, directing the district court to enter findings of fact and conclusions of law as to the legal bases for a preliminary injunction. We neither foreclosed nor required further evidentiary hearings on whether conditions had changed sufficiently from the time of the original evidentiary hearings as to affect the propriety of preliminary injunctive relief.

On remand, defendants argued that plaintiffs had failed to meet their burden of showing a likelihood of success on the merits and irreparable injury and that therefore preliminary injunctive relief was not appropriate. While apparently not objecting to additional hearings, defendants stated that "no further hearings are necessary in order to determine this motion." The district court rejected defendants' arguments and entered findings of fact and conclusions of law in support of preliminary injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure. The court concluded that plaintiffs had made a showing of substantial likelihood of success on the merits of their constitutional claim and that the potentially devastating effects of the SHU environment on a mentally ill inmate, as illustrated by Dzeilak's death, were sufficient to establish irreparable harm. The court then reissued its January 1987 injunctive order. This second appeal followed.

Appellants argue that the district court abused its discretion in finding that appellees had established a likelihood of success on their claim of constitutional deficiencies in the Attica mental health care system. They claim that there is no basis in the record for finding systemic constitutional deficiencies, asserting that the evidence largely focuses on the treatment of one inmate, namely, Anthony Dzeilak, during a two month period prior to his death. Appellants contend that the inadvertent failure to provide adequate medical care to one individual does not establish a constitutional violation. See *Estelle v. Gamble*, 429 U.S. 97, 105–06, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976). Moreover, they argue that unrebutted testimony in the record establishes that the mental health system in place in 1985 provided complete and effective care to all inmates at Attica, including those in SHU. Appellants also argue that the district court abused its discretion in making a finding of irreparable injury without inquiring into the current conditions at Attica. They claim that they have voluntarily implemented substantially all of the procedures mandated in the court's preliminary injunction and that therefore appellees would not suffer irreparable injury if preliminary injunctive relief were denied.

■ A party seeking preliminary injunctive relief must establish (a) that the injunction is necessary to prevent irreparable harm and (b) either that (i) it is likely to succeed on the merits of the underlying claim or (ii) there are sufficiently serious questions going to the merits of the claim as to make it a fair ground for litigation

and that the balance of the hardships tips decidedly toward the movant. *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985). As we noted in *Abdul Wali*,

> A movant seeking to avail himself of the first alternative need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent. There may remain considerable room for doubt.

Id. In *Abdul Wali*, however, the court also stated that where injunctive relief does not merely maintain the status quo, but rather grants the movant substantially all the relief he ultimately seeks, a more stringent standard is required—the movant "must show a substantial likelihood of success on the merits, *i.e.*, that [his] cause is considerably more likely to succeed than fail (together, of course, with the requisite irreparable injury)." Id. at 1026. It is this heightened standard that the district court applied in this case. The court in *Abdul Wali* also indicated that a similar heightened standard applies to mandatory injunctions, that is, injunctions that disturb the status quo by ordering affirmative relief, as opposed to prohibitory injunctions which preserve the status quo. However, the court expressed some doubt as to whether there was a principled means of distinguishing in general between mandatory and prohibitory injunctions. Id. at 1025–26. See also C. Wright & A. Miller, Federal Practice and Procedure, Civil § 2948, at 465–66 (1973), which notes that the doctrine that preliminary injunctions should be disfavored when they disturb the status quo has been subject to academic and judicial criticism.

It is far from clear that a heightened standard for granting preliminary injunctive relief is appropriate in this case. In *Abdul Wali*, the plaintiffs sought access to a specific report detailing conditions within Attica. The "preliminary" injunction issued by the district court enjoined the defendants there from interfering with the delivery of the report, thus granting plaintiffs substantially all the relief they ultimately sought, in effect, as if the injunction had been permanent. Here, plaintiffs have not been granted all the relief they seek. The preliminary injunction merely protects the rights of the plaintiff class until a final determination on the merits is reached. If their mental health care claims are ultimately unsuccessful, the relief will end—the preliminary relief they would have obtained in the interim would in no way have been complete. Moreover, since the injunction merely mandates that appellants maintain procedures that appellants themselves claim are already substantially in effect, it does little more than maintain the status quo.

■ The standard for reviewing the scope and type of injunctive relief issued by a district court is whether the relief amounts to an abuse of the court's equitable remedial discretion. *Dean v. Coughlin*, 804 F.2d 207, 213 (2d Cir.1986). We recognize that "[a]lthough a federal district court's powers are broad, 'appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief,' ... when it comes to regulating a state's administration of its own facilities, including its schools and prisons." Id., quoting *Rizzo v. Goode*, 423 U.S. 362, 379, 96 S.Ct. 598, 608, 46 L.Ed.2d 561 (1976).

■ On the record before us, we believe that the district court acted within its discretion in ordering preliminary injunctive relief in this case and that the scope of the relief ordered was within permissible limits. The court had sufficient support in the record to determine that plaintiffs are likely to succeed on the merits of their claim that officials at Attica demonstrated a "deliberate indifference to serious medical needs of prisoners...." *Estelle v. Gamble*, 429 U.S. at 104, 97 S.Ct. at 291. Despite their focus on the specific treatment of Dzeilak, plaintiffs put forward sufficient evidence to support the court's finding of systemic deficiencies in Attica's mental health system. It is important to note, however, that we do not decide at this stage whether defendants' actions actually met the "deliberate indifference" standard, but only that the district court did not

abuse its discretion in determining that plaintiffs are likely to succeed on their claim. Moreover, we do not believe that the court abused its discretion in finding irreparable harm. Although defendants claim to have voluntarily implemented substantially all of the ordered relief, without a preliminary injunction there is nothing to prevent defendants from abandoning procedures which the court determined to be necessary to protect plaintiffs' constitutional rights. And, as the incident involving Dzeilak illustrates, the consequences of defendants' failure to adhere to proper procedures can be severe.

This is not a case like *Dean v. Coughlin,* where the district court "went too far and too fast in imposing upon the state correctional facility its own ideas of how a prison ..." should be run. 804 F.2d at 214. The court took painstaking efforts to try and reach a settlement among the parties and only when those efforts failed did it order limited relief to provide safeguards for seriously mentally ill inmates pending resolution of the case. And, the relief ordered apparently does not go much beyond procedures that defendants have voluntarily implemented and is apparently based on the recommendations of New York's OMH.

We therefore affirm the order of the district court. In light of the period of time that has elapsed since appellees' original motion, the trial judge might consider a severance of the mental health claims from the other claims in the class action, in order to bring these claims to prompt resolution. However, we do not suggest that a severance is necessary if either party objects and the district court determines that countervailing considerations make a severance undesirable.

Order affirmed.